## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

FEDERAL BUREAU OF INVESTIGATION
AGENTS ASSOCIATION;
JOHN DOE 1;
JOHN DOE 2;
JOHN DOE 3;
JOHN DOE 4; and
JANE DOE 1;
JANE DOE 2; and
JANE DOE 3.

              Plaintiffs,

              v.

U.S. DEPARTMENT OF JUSTICE and
THE UNITED STATES OF AMERICA,

              Defendant.

Civil Case No. 25-_____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A

## TEMPORARY RESTRAINING ORDER

In this action, individual John Doe and Jane Doe Plaintiffs ("Plaintiffs") seek to vindicate the

myriad constitutional and statutory rights violated by the wrongful, politically motivated

targeting of them and, in the case of the Plaintiff Federal Bureau of Investigation Association

("Association Plaintiff"), the targeting of similarly situated agents and personnel of the Federal

Bureau of Investigation ("FBI"). In this Motion, Plaintiffs and Association Plaintiff seek a

temporary restraining order for the specific and narrow purpose of preventing the irreparable

damage that disclosure of Plaintiffs' identities, as is anticipated as part of the planned

forthcoming public mass firing, would inflict on the individual Plaintiffs, their families, and the

American public.

     As detailed below, Plaintiffs will suffer specific and urgent irreparable injuries if the

Department of Justice ("DOJ") forces the FBI to unlawfully order mass, adverse employment

1

actions against FBI agents and personnel like Plaintiffs and, in so doing, publicly discloses the identities of the targeted agents and personnel. Upon information and belief, as happened to members of FBI leadership on Friday, January 31, the Defendants are imminently preparing to take adverse employment actions and, in the process, cause the public disclosure of their names and identities. This disclosure could occur as soon as today. That disclosure will cause irreparable harm to Plaintiffs, their similarly situated colleagues, and their families, all but guaranteeing they will face threats of physical harm and emotional harassment in violation of their First Amendment and Due Process rights.

To avoid those imminent, irreparable injuries, Plaintiffs and Association Plaintiffs respectfully seek a temporary restraining order from this court enjoining Defendants and any other governmental actors from this public disclosure. Given the extraordinarily short time frame for meaningful relief—again, Plaintiffs' names could be released at any moment—the emergency relief sought is limited to preventing that disclosure so that the *status quo* may be preserved.

## BACKGROUND

This Motion incorporates the factual allegations of Plaintiffs' Complaint. This background is intended to provide the Court with a brief summary of operative events.

In recent days, numerous career civil servants throughout the DOJ, including the FBI, have been publicly terminated or pressured to resign due to their work on cases related to the events of January 6, 2021. Sarah N. Lynch & Andrew Goudsward, *Trump's Justice Department launches sweeping cuts targeting Jan. 6 prosecutors, FBI agents*, Reuters (Jan. 31, 2025).[1] On Thursday, January 31, Acting Deputy Attorney General Emil Bove "told the top federal prosecutors in each

---

[1] *Available at* https://www.reuters.com/world/us/fbi-launches-wide-ranging-round-cuts-sources-say-2025-01-31/

state to compile a list of *all* prosecutors and FBI agents who worked on the investigation of the Capitol riot." *Id*. (emphasis added). "That memo ordered eight FBI officials to resign or be fired, saying that their participation in the Jan. 6 cases represented part of what Trump has called the 'weaponization' of government," *id*., and identified at least some of the terminated officials. Ken Dilanian, Tom Winter, Jonathan Dienst & Ryan J. Reilly, *Senior FBI official forcefully resisted Trump administration firings*, NBC News (Feb. 1, 2025).[2]

Within the past week, credible reports indicate that the FBI has been directed to—and, indeed, plans to—systematically terminate all Bureau employees who had any involvement in certain investigations related to President Trump, including January 6 cases. Adam Goldman, Devlin Barrett & Glenn Thrush, *Trump Officials Fire Jan. 6 Prosecutors and Plan Possible F.B.I. Purge*, N.Y. Times (Jan. 31, 2025);[3] Evan Perez, Josh Campbell & Hannah Rabinowitz, *Trump DOJ demands list of thousands of FBI agents, others who worked on Jan. 6 and Trump investigations for possible firing*, CNN (Jan 31, 2025).[4] As many as 6,000 FBI employees may be targeted for firing including Plaintiffs. *See* Adam Goldman, William K. Rashbaum, Maggie Haberman & Glenn Thrush, *Top F.B.I. Agent in New York Vows to 'Dig In' After Removals at Agency*, N.Y. Times (Feb. 2, 2025) ("Mr. Trump's political appointees plan to purge career bureau officials, including rank-and-file field agents. That number could reach 6,000—or about a sixth of the bureau's 38,000 employees, according to the F.B.I.").[5]

Turning now to the subject of our TRO request: In addition to the planned adverse employment actions, there is every indication that the Defendants intend to publicly disseminate

---

[2] *Available at* https://www.nbcnews.com/politics/national-security/senior-fbi-official-forcefully-resisted-trump-administration-firings-rcna190301
[3] *Available at* https://www.nytimes.com/2025/01/31/us/politics/trump-fbi-agents.html
[4] *Available at* https://www.cnn.com/2025/01/31/politics/fbi-agents-who-investigated-january-6-fired/index.html
[5] *Available at* https://www.nytimes.com/2025/02/02/us/politics/fbi-new-york-email-trump.html

the names of Plaintiffs and their similarly situated colleagues, seemingly for the purposes of retaliation and stigmatization. Such disclosure would be contrary to statutory and constitutional law and would directly put the safety of all impacted individuals at risk as well as their family members. In response to rising threats against FBI agents, in 2022 "the FBI issued a joint intelligence bulletin warning of an increase in threats, quietly hardened its facilities *and scrubbed personal information from websites to protect personnel from possible danger*." Perry Stein, *et al.*, *As the FBI comes under threat, its leader tries to stay out of fray*, Wash. Post (Aug. 20, 2022)(emphasis added).[6]

And indeed, leaders of the January 6 riot and others have already tagged FBI agents who worked on the investigation and prosecutions of those rioters. For example, self-described "Leader of the Notorious ProudBoys [&] United States Secretary of Retaliation" Enrique Tarrio threatened an FBI agent by name in a X post on Saturday evening, and encouraged his 17,500 followers to "tell your stories and name those who committed these heinous acts."

---

[6] *Available at* https://www.washingtonpost.com/national-security/2022/08/20/fbi-comes-under-threat-its-leader-tries-stay-out-view/



@NobleOne,           X,          (February         1,         2025,         5:14         PM),

https://x.com/NobleOne/status/1885889389160513818.   Hours later, Mr. Tarrio stated that "If

ANY J6er needs me to boost their post calling out their prosecutors or any agents involved please

DM me and I'll give you a RT." @NobleOne, X, (February 1, 2025, 10:42 PM),

https://x.com/NobleOne/status/1885911732972896497. As of the time of filing, that post has been

viewed more than 60,000 times and the comments reveal the names and contact information of

numerous FBI and other law enforcement agents, often alongside threatening rhetoric.

Remarkably, *the DOJ* is now preparing to publicly name these very FBI agents that it knows are

under threat.

## LEGAL STANDARD

"The purpose of a temporary restraining order . . . is to preserve the *status quo* while the

court considers the merits of the case." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239, 2025 WL 314433, at *2 (D.D.C. Jan. 28, 2025). "To secure a temporary restraining order, 'the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.'" *Id.* (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). These factors are "balanced on a 'sliding scale,' *i.e.*, a lesser showing on one factor can be surmounted by a greater showing on another factor." *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 (D.D.C. 2009) (quoting *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.D.C. 2005)); *but see Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 12 (D.D.C. 2024) (noting at least some disagreement within circuit about continued applicability of "sliding scale" approach).

For an injury to be "irreparable," it must be "beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. The chilling of First Amendment freedoms "unquestionably" constitutes irreparable injury, *Media Matters*, 732 F. Supp. 3d at 29, as does the government's alleged violation of structural constitutional rights, such as the Establishment Clause, *see Chaplaincy of Full Gospel Churches*, 454 F.3d at 301-302. *Cf. United States v. Washington Post Co.*, 446 F.2d 1322, 1324 (D.C. Cir. 1971) (reversing the district court's denial of a TRO, and granting TRO barring public release of information where the mere publication could cause irreparable harm to national security); *United States v. Philip Morris Inc.*, 314 F.3d 612, 621–22 (D.C. Cir. 2003) (finding "irreparable injury" should disclosure of attorney-client privileged materials proceed, and that the "implications" of the disclosure "would be very difficult" to remedy) (abrogated on other grounds); *Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d

67, 72, 75–76 (D.D.C. 2009) (granting TRO prohibiting further disclosure of organizational plaintiff's proprietary information where there was credible evidence that the organization and its employees "ha[d] received various threats" following earlier disclosure of similar information, explaining "If such material is further used and/or continues to be disclosed before the Court has an opportunity to hear Defendants and to determine the merits of CAIR's claim, the very rights CAIR seeks to protect will have been destroyed."); *Morgan Stanley DW Inc. v. Rothe,* 150 F.Supp.2d 67, 77 (D.D.C. 2001) (finding that plaintiff would be irreparably harmed absent temporary restraining order enjoining defendants from using its proprietary information).

## ARGUMENT

### I.    Plaintiffs are likely to succeed on the merits.

#### A.    *Privacy Act Violations*

The Privacy Act of 1974 (the "Privacy Act") "prohibits the disclosure of personal information about federal employees without their consent." *Fed. Lab. Rels. Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*, 884 F.2d 1446, 1450 (D.C. Cir. 1989) (citing 5 U.S.C. § 552a(b)). Specifically, it prohibits disclosures of records, which are defined as "any item, collection, or grouping of information about an individual that is maintained by an agency . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4). The "employee names" and other personally identifiable information contained in the records ("items of information") at issue in this case plainly fall within the Privacy Act's scope. *See Fed. Lab. Rels. Auth.*, 884 F.2d at 1450. The statute lists certain limited exceptions allowing disclosure, *see* 5 U.S.C. § 552a(b), but there is no general exception permitting an agency to disclose covered records to nongovernmental third-parties without consent of the individual to whom the record pertains. Accordingly, the public disclosure of the

information at issue, which will imminently occur absent the Court's granting of this Motion, is a clear violation of the Privacy Act.

**B.    *First Amendment Violations***

For years, political and media figures, including those now leading the Executive Branch, have falsely posited that the FBI and its agents are political enemies opposed to President Trump and the political movement that supports him. For instance, on Truth Social, President Trump has repeatedly disparaged the FBI, calling it the "Gestapo,"[7] run by "thugs" to be "dealt with."[8] President Trump and his close allies have fueled a public narrative that the January 6 attack was in fact *orchestrated* by the FBI—a destructive falsehood that, sadly, 25 percent of respondents to one survey thought was either "definitely" or "probably" true. Chuck Rosenberg, *January 6th Wasn't an FBI Operation. And the Earth Revolves Around the Sun*, Lawfare (Jan. 18, 2024);[9] *see also* Alyssa Meiman, *Trump has spread conspiracy theories about January 6th more than 175 times on Truth Social*, CREW (June 6, 2024).[10]

Now, Plaintiffs and their similarly situated FBI colleagues are being explicitly targeted for the unlawful disclosure of their identities, alongside other adverse personnel actions, *because of* their law enforcement work on cases related to the January 6, 2021 riot and, by extension, their presumed opposition to the events of January 6 and those responsible. *See, e.g.*, Adam Goldman, Devlin Barrett & Glenn Thrush, *Trump Officials Fire Jan. 6 Prosecutors and Plan Possible F.B.I.*

---

[7] @realDonaldTrump, Truth Social (Jan. 24, 2023, 10:41 AM), https://truthsocial.com/@realDonaldTrump/posts/109745175533954622
[8] @realDonaldTrump, Truth Social (Dec. 17, 2022, 6:32 AM), https://truthsocial.com/@realDonaldTrump/posts/109529028482982758
[9] *Available at* https://www.lawfaremedia.org/article/january-6th-wasn-t-an-fbi-operation.-and-the-earth-revolves-around-the-sun
[10] *Available at* https://www.citizensforethics.org/reports-investigations/crew-investigations/trump-has-spread-conspiracy-theories-about-january-6th-more-than-175-times-on-truth-social/

*Purge*, N.Y. Times (Jan. 31, 2025).

For fifty years, the Supreme Court has held that the First Amendment "prohibits the dismissal of a public employee solely because of his private political beliefs" unless the government can demonstrate an "overriding interest . . . of vital importance," that is governmental in nature rather than political. *Branti v. Finkel*, 445 U.S. 507, 516–17 (1980) (quoting *Elrod v. Burns*, 427 U.S. 347, 351 (1976)); *accord Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990). This protection extends to situations where the adverse action was motivated by a perception— even an incorrect one—about the employee's political beliefs, expression, or affiliation. *See Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 268, 272 (2016). Accordingly, the First Amendment prohibits retaliating against FBI personnel like Plaintiffs based on the perception that they have political beliefs that are disfavored by the now-ruling party.

*Branti* is particularly instructive. The *Branti* Court refused to allow adverse action against career civil servants—there, the firing of Republican assistant public defenders—by a new Democratic public defender, when the only reason for the termination was the defendants' Republican Party affiliations. In holding that continued employment could not be "conditioned upon [] allegiance to the political party in control," the court reasoned that the public defenders' jobs were to serve individual clients as opposed to any "partisan interests"; accordingly, it would "undermine, rather than promote, the effective performance" of the office's public-facing mission to permit politically motivated termination. *Branti*, 445 U.S. at 519. That is certainly the case with respect to the disclosure of these names, which would significantly undermine the willingness of FBI agents like Plaintiffs to perform their jobs and uncut the FBI's critical mission.

Indeed, Plaintiffs and other FBI personnel are not hired by the United States to perform partisan jobs. Far from it. The mission of the FBI is to broadly "protect the American people and

uphold the Constitution of the United States," without regard to partisan politics. Mission and Priorities, F.B.I. (last accessed Feb. 2, 2025), https://www.fbi.gov/about/mission. One of the most critical responsibilities of FBI personnel is to enforce federal laws impartially without political bias or undue influence. This duty is grounded in the agency's mission, affirmed by numerous federal laws and internal policies, and reflected in Plaintiffs' promise to "bear true faith and allegiance" to the U.S. Constitution. *See* 5 U.S.C.A. § 3331. As was the case in *Branti*, permitting politically motivated adverse action by the "political party in control" such as the disclosure of the information here sought to be enjoined would "undermine, rather than promote, the effective performance" of the FBI, 445 U.S. at 519, and is prohibited by the First Amendment.

### C.    *Fifth Amendment Due Process Claims*

The Plaintiffs also have strong substantive Due Process claims under the Fifth Amendment arising from their protected liberty interest in their stellar reputations following distinguished yearslong careers at the FBI.  "In this circuit, a plaintiff may avail himself of two different legal theories to establish a reputation-based due-process violation." *Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016). "The first, commonly called a 'reputation plus' claim, requires 'the conjunction of official defamation and [an] adverse employment action'"—"both of which are present here." *Id*. (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998)). As recently distilled in *McCabe v. Barr*, 490 F. Supp. 3d 198 (D.D.C. 2020):

> A plaintiff pursuing such a claim must demonstrate that:
>
> (1) "the government's defamation resulted in a harm to some interest beyond reputation," like the "[l]oss of present or future government employment;" and
>
> (2) "the government has actually stigmatized his or her reputation by, for example, charging the employee with dishonesty, and that the stigma has hampered future employment prospects."

*McCabe*, 490 F. Supp. 3d at 220–21 (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1111

(D.C. Cir. 1985)).  Both prongs are present here. Although the Plaintiffs acted as non-partisan FBI employees endeavoring to uphold their oaths to the U.S. Constitution, they are being targeted for public identification based on the false and defamatory premise that they abused their positions of authority for partisan reasons. That puts Plaintiffs' present employment in jeopardy, and tarnishes Plaintiffs with the ire of those who have already begun to stigmatize Plaintiffs and other FBI agents as criminals and "co-conspirators" based on their work at the FBI.

The Sixth Circuit considered an analogous situation in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), a 42 U.S.C. § 1983 case in which undercover officers sought to prevent disclosure from their personnel files for fear that a violent gang they were investigating would use the information to "seek revenge." *Id.* at 1063. Performing a substantive due process analysis under the Fifth and Fourteenth Amendments, the court found the officers' constitutional privacy interests demanded careful weighing against a limited public interest in disclosure. Having "no doubt that the officers or their family members would suffer irreparable harm" from violence resulting from the disclosure, the Sixth Circuit affirmed their right to nondisclosure, affirmed their right to recover section 1983 damages, and provided an injunction ensuring notice and an opportunity to contest future disclosures. *Id.* at 1068, 1069. *Cf. John Doe No. 1 v. Reed*, 561 U.S. 186, 200 (2010) (quoting with approval *Buckley v. Valeo*, 424 U.S. 1, 74 (1976) for the proposition that "those resisting disclosure can prevail . . . if they can show 'a reasonable probability that the compelled disclosure [of personal information] will subject them to threats, harassment, or reprisals either from Government officials or private parties'" (bracketed alteration in *Reed*)); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 74 (D.C. Cir. 2019) (assuming without deciding that a constitutional right to informational privacy protects against "intentional disclosures or their functional equivalent" by the government).

II.    **Plaintiffs will suffer immediate, irreparable injury should their names be disclosed.**

Here, there is no doubt that the DOJ's expected disclosure of Plaintiffs' names threaten "irreparable" injuries that would be "beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Irreparable injury is established here based on the alleged constitutional violations alone; that said, the chilling, foreseeable consequences of disclosure provide further grounds to find irreparable harm under a variety of legal theories.

Where, as is the case here, the First Amendment provides a structural protection against the government's action, irreparable harm is presumed. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 301-02. As in *Chaplaincy of Full Gospel Churches*, "the pertinent liberty here is protection against government imposition" of a preferred political orthodoxy, which "is implicated as soon as the government engages in impermissible action." *See id.* at 302 (discussing Establishment Clause violation). Once that structural First Amendment violation is properly alleged, as it is here, "infringement occurs the moment the government action takes place—without any corresponding individual conduct—. . . [and] First Amendment interests are 'threatened or in fact being impaired,'" causing irreparable harm. *Id.* at 303.

The Fifth Amendment Due Process harms will also be irreparable should the public disclosure of the Plaintiffs' identities proceed. If the Plaintiffs have personal information released alongside whatever adverse employment actions are planned, with no due process, under the false pretext that their affiliation with the January 6 investigation renders them either unfit for service or at odds with the Trump Administration, they will likely lose not just their present employment, but their prospects for future employment and their reputations as long-standing FBI agents in good standing. Indeed, this threatened reputation harm is particularly dire for individuals like Plaintiffs whose effectiveness as law enforcement professionals depends on maintaining

credibility and trust across different presidental administrations. *See, e.g.*, *Jefferson*, 170 F. Supp. 3d at 205 (due process violation based on "stigma-plus depends . . . on governmental imposition of 'a continuing stigma or other disability arising from official action' that 'foreclosed the plaintiff's freedom to take advantage of other employment opportunities.'") (quoting *O'Donnell*, 148 F.3d at 1140); *Doe v. Pennsylvania State Univ.*, 276 F. Supp. 3d 300, 315 (M.D. Pa. 2017) (finding that "irreparable harm to [Plaintiffs'] professional career and advancement" due to alleged constitutional violations supported TRO).

Furthermore, in addition to the loss of First Amendment freedoms and the irreparable reputational injuries caused by the Due Process violations, there is, unfortunately, ample evidence that Plaintiffs will be subjected to harassment and potential physical violence. Indeed, FBI personnel involved in investigations concerning President Trump have been repeatedly subjected to serious threats. In 2022, for example:

> FBI agents who carried out the [Mar-a-Lago] search were doxed in posts on Trump's social media network. Violent rhetoric swirled online. One man attempted to breach an FBI field office in Ohio and, after a police chase and six-hour standoff, was shot dead. A Pennsylvania man was arrested and charged with threatening to kill FBI agents.

Perry Stein, *et al.*, *As the FBI comes under threat, its leader tries to stay out of fray*, Wash. Post (Aug. 20, 2022).[11] More recently, a man convicted for assaulting a police officer on January 6 was separately convicted for "trying to recruit people to help him kill FBI agents who had investigated him in the Jan. 6 case." Ryan Reilly, *Jan. 6 rioter is convicted of plotting to murder FBI agents who investigated him*, NBC News (Nov. 21, 2024);[12] *see also* John North, *Maryville man convicted in FBI murder plot seeks to dismiss case, citing Trump pardon*, WBIR-TV (Jan. 29, 2025)

---

[11] *Available at* https://www.washingtonpost.com/national-security/2022/08/20/fbi-comes-under-threat-its-leader-tries-stay-out-view/
[12] *Available at* https://www.nbcnews.com/politics/justice-department/jan-6-rioter-convicted-plotting-murder-fbi-agents-rcna181005

(explaining President Trump pardoned the defendant for his actions on January 6, and the defendant now seeking to have his conviction for plotting to kill FBI agents overturned).[13] Accordingly, Plaintiffs reasonably fear for the safety of themselves and their families if their names are disclosed.

Moreover, Plaintiffs' apprehension of impending harm, including the risk of serious violence, and ensuing distress are particularly well warranted here. Multiple courts, including this one, have found it necessary to impose expansive protective orders to prevent President Trump from disclosing personal information of individuals involved in litigation concerning him personally, based on the well-founded fear that his supporters will take adverse action, including death threats and other violence. *United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023); *Matter of Trump v. Merchan*, 227 A.D.3d 518, 520 (N.Y.A.D. 1st May 14, 2024) (upholding protective order because President Trump creates "significant and imminent threat" to judicial witnesses). The D.C. Circuit emphasized the "predictable torrent of threats of retribution and violence that . . . follows when Mr. Trump speaks out forcefully against individuals in connection with . . . the 2020 election aftermath." *Trump*, 88 F.4th at 1015.

One final note: although the Privacy Act envisions relief for disclosure violations in the form of compensation for actual damages, 5 U.S.C. § 552a(g)(4)(A), it is well-settled that even when damages are available, "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984). Such injuries are therefore "irreparable." *Id.*  Accordingly, courts will grant

---

[13] *Available at* https://www.wbir.com/article/news/crime/maryville-man-convicted-in-fbi-murder-plot-seeks-to-dismiss-case-citing-trump-pardon/51-5f611b7a-d8d9-462d-ab7f-78fe0b346780

preliminary relief to protect Privacy Act interests from non-compensable damages associated with improper disclosure. *See, e.g.*, *Calvillo Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1106 (N.D. Cal. 2018) ("[T]he emotional distress that Plaintiffs are suffering from the violation of the Privacy Act is irreparable, and an injunction is warranted."); *Krebs v. Rutgers*, 797 F. Supp. 1246, 1259 (D.N.J. 1992) ("[T]he important privacy interests protected by the Privacy Act and FERPA reflect the fact that any violations of those protected rights presents serious, "irreparable" injury."). Again, here, the violation of Plaintiffs' privacy interests will result in grave, not fully compensable injuries, including significant reputational harm among those who credit the defamatory premise for their termination, loss of future employment opportunities particularly in the law enforcement and security fields, threats, harassment, and emotional distress.

## III.     The balance of equities and the public interest favor Plaintiffs.

"There is generally no public interest in the perpetuation of unlawful agency action," nor can the government claim harm from being prevented from undertaking illegal acts. *Open Communities All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Moreover, here, disclosing Plaintiffs' identities and the identities of those similarly situated threaten to undermine the rule of law and federal law enforcement, with grave public consequences. Thus, the balance of equities and the public interest also favor Plaintiffs and require immediate relief.

## CONCLUSION

The DOJ seeks to retaliate against Plaintiffs and similarly situated FBI personnel by publicly disclosing their identities simply because those individuals honorably performed their duties in connection with sensitive law enforcement investigations. Such acts are unconscionable, dangerous to the American public and illegal under the U.S. Constitution and numerous federal

laws. This Court must restrain that abuse and grant the Plaintiffs' motion for a temporary restraining order.

Respectfully Submitted,

**For John Does 1-4 and Jane Does 1-3,**

*s/Mark S. Zaid*

_____
Mark S. Zaid, D.C. Bar #440532
Bradley P. Moss, D.C. Bar #975905
Law Office of Mark S. Zaid, P.C.
1250 Connecticut Avenue, NW
Suite 700
Washington, D.C. 20036
Tel: (202) 498-0011
Fax: (202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

Norman L. Eisen, D.C. Bar #435051
Tianna J. Mays, D.C. Bar #90005882
State Democracy Defenders Fund
600 Pennsylvania Avenue SE
#15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Tianna@statedemocracydefenders.org

**For the Federal Bureau of Investigation Agents Association,**

*s/Christopher M. Mattei*

_____
Christopher M. Mattei (pro hac vice pending)
Federal Bar No. 27500
Margaret M. Donovan (pro hac vice pending)
Federal Bar No. 31787
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: 203-336-4421
Fax: 203-368-3244
cmattei@koskoff.com
mdonovan@koskoff.com